Your Honor, may it please the court, my name is Justin Beck and I, together with my co-counsel Matthew O'Brien, will be representing Ms. Rosemary Garity in today's case. I plan to spend four minutes addressing the question this court asked us to brief, that is, which Title VII standard to apply. And my co-counsel will spend five minutes addressing res judicata and the non-ADA claims. I'll give you one minute for rebuttal. The case before you today is an ADA employment discrimination case where the court below simply applied the wrong legal requirements a plaintiff must allege to make out a prima facie claim. Because the district court held in a previous order that Ms. Garity had stated an ADA claim but for the added element, the question presented here is purely legal. Does Title VII and the ADA require plaintiffs to prove a breach of the duty of fair representation as an element of claims against labor unions? We urge this court to hold that it does not. The text and purpose of the statute demonstrate why the standard applied below is wrong. As the Seventh Circuit said in Green, nothing in the text of Title VII makes anything turn on the existence of a statutory or contractual duty. Counsel, let's suppose that I think that Judge Easterbrook's opinion in Green has got the best of the argument here. Are we bound by something that we said in Beck? No, Your Honor, this court is not bound by Beck. We're not bound by Beck? Or the court wasn't sufficient so clear in Beck that Beck binds this panel? The second one, Your Honor. The smarter answer. And the reason that's the case is because while Beck mentioned the standard that the union now advocates and that the district court applied, it mentions it only in its recitation of the district court's reasoning. And in fact, when it goes on to analyze the Title VII question itself, it cites to McDonnell Douglas. Now, the confusing part of the opinion is that it says, it uses the language that the two standards are generally consistent with one another, which the best reading of that case is that... And it refers to the Seventh Circuit opinion in Buck. So it's just a little misleading. From your position, at least, it feels like a little bit of misdirection. Now, the question is how much misdirection did the panel give us and are we bound by it? Yes, Your Honor. Now, essentially what the court did there was say that it was generally consistent. And the reason it said that is because in that case, the standard that it applied did not change the outcome of the case. And the reason is because before the court reached the Title VII question, it analyzed the duty of fair representation question, and it concluded that there was a breach of the duty of fair representation. So by the time it got to Title VII, it didn't matter whether Title VII was an element of the case or an element of the claim. In our case, by contrast, we have a district court order saying that there was not a breach of the duty of fair representation, and so the standard to apply is outcome determinative. It's going to decide this case. Are you suggesting that in our case in Beck we did not reference, bug, or apply it? No, Your Honor. There's no question we referenced it, but you're saying we didn't even apply it? Well, all the court said in Beck is that the two standards are generally consistent. And what we're saying is that the reason it said that is because it didn't matter which standard the court applied in that case because the outcome was going to be the same either way. So essentially the court didn't have to reach the question that is before the court today. The question before the court today is which standard is correct. So what you're saying is we did apply bugs, we did apply, if you will, McDonnell-Douglas, I'll just call it that since that's what I see it, but now you're saying we can apply either one today? No, Your Honor. The court in Beck mentioned the bug standard, but it doesn't get to the question of which standard is correct, bug or green, because it didn't have to. And the reason it didn't have to is it couldn't have reached green because green hadn't been decided. Or which standard is correct, bug or the traditional McDonnell-Douglas factors is what I mean when I say green. And the reason it didn't reach that question is because that question was not an issue in the case. Because it had already decided that there was a breach of the duty of fair representation, it didn't matter whether that was an element of the claim. And so it couldn't analyze the McDonnell-Douglas factors and conclude that there was a Title VII violation without determining the question of whether or not it needs to include that as an element of the claim. Is there an ADA tort claim in this case if there isn't also a contract? Yes, Your Honor, there is. So it's statutory only? Well, because the ADA specifically refers to labor organizations as well as employers, it applies in full force to labor organizations notwithstanding the collective bargaining agreement. Your Honor, I mean, it seems to me that that is a pretty big question in determining whether bugs controls us or not, don't you think? The question of whether depends on a collective bargaining agreement? No, whether we have a claim outside of the contract. Oh, well, yes, Your Honor, and as the Court said in green, the reason why Title VII or the ADA can't depend entirely on a contract is because that would completely gut the statute as it applies to labor organizations. If Title VII only applied when there was a violation of the contract, then for one, Title VII would never have had to be passed in relation to labor organizations because the plaintiff would already have a remedy under the collective bargaining agreement. And secondly, just Congress making it depend on some other duty or some other violation just defeats the purpose. Your Honor, my time has expired, and at this moment I'd like to defer to my partner if this Court has no other questions. You may do so. Thank you, Counsel. Thank you. May it please the Court, my name is Matthew O'Brien. I'll be addressing the issue of res judicata and the non-ADA claims. Res judicata does not apply in this case because the union has failed to meet the burden it bears in proving that preclusion applies. While the answering brief focuses extensively on the fact that Ms. Garrity made similar allegations in the two complaints, it ignored the other factors and elements that go into considering preclusion. Additionally, Ms. Garrity has not had a full and fair opportunity to litigate her claims and issues in this case. The Supreme Court has consistently held that a plaintiff must have a full and fair opportunity to litigate before preclusion can apply. And since after the denial of consolidation, Ms. Garrity was unable to argue her legal arguments on the claims and issues in this case in her previous case. But give me a little outline here. It seems to me that the complaint is barred by issue preclusion if it satisfies the three tests, one of the tests being the identity of the claims, one being in final judgment, and the last being the identity and privity. If that's so, it seems to me you have had a fair chance to argue, haven't you? For the issue of issue preclusion, we believe that the district court erroneously applied it, believing that a breach of the duty of fair representation was an element of the ADA claims. If that's not an element, as we argue, then that issue has never been addressed, and Ms. Garrity has not been able to argue her ADA claims. Going further, in the claims preclusion, which you alluded to, there is no identity of claims. So if we were to disagree with you on the first issue, the issue that Mr. Beck argued, then do you concede here that it's been barred by res judicata? If we agree that if we decide the bug is correct, that a DFR is an element of an ADA claim here against a union, then do you lose on res judicata? In part, Your Honor, yes. If you create a circuit split with the Seventh Circuit, we would lose the ADA claims on issue preclusion because it would be an element that's already been proven in the other case. But the non-ADA claims would still survive because there still would be no common elements or issues of facts between the cases. I'm sorry, which non-ADA claims? The emotional distress claims, the negligent retention claim, and the 1985 and 1986 claims. So you're talking about the state claims and the 1985 and 1986 claims? Yes, Your Honor. I see. I just wanted to make sure. Well, the worry that I have is that it seems to me, as my colleague has now presented, that if Mr. Beck's argument is not something we go with, then it seems to me your complaint is barred. As to the ADA claims, yes, it would be, Your Honor, though we would argue that the court should adopt the Green opinion and that Beck did not actually buy the story. I do so. I am out of time, and I'd like to reserve the remainder for rebuttal, if there's no further questions. You may do so. Thank you, Mr. O'Brien. Mr. Hall? May it please the Court? I'm Michael Hall, and I represent the American Postal Workers Union. First of all, getting to your initial questions, this Court is bound by the Beck decision. In Beck, the Court did not mention the bug standard in passing. It was not dicta. It specifically referenced the bug standard, and it analyzed each of the elements in bug. Well, it sure was odd the way that the Court set it out, if that's true, Mr. Hall, because it doesn't refer to that until Part B. And in Part A, it goes through all the elements of what somebody has to prove in order to show a Title VII case. It does. So it's reviewed all of the elements without mentioning duty of fair representation at all. And then B looks like it's the application, where it just begins with the recitation of what the district court said. And the district court cited the Eastern District of Virginia, citing the Seventh Circuit. It appears to be just a passing reference, and then we have this sort of idle comment that it's generally consistent. It didn't say it was consistent. It said it was generally consistent, and I don't know what to do with that. Well, Judge, here's the thing. In that opinion, once it does mention the bug standard, it then analyzes the district court's opinion on each one of those elements. And if you have any question that the court was looking at all those elements and trying to decide if those elements should be applied here, take a look at footnote 4 of the opinion, because in footnote 4, the court actually looks at the third prong of the bug standard, and it says, look, we're concerned about the continuing viability of the third prong of that test. Now, obviously, the court, when analyzing the opinion and looking at bug and discussing the fact that it's consistent with McDonnell-Douglas, it was looking at each prong of the bug test and trying to determine whether or not the district court's opinion in that case met the standard in bug. It adopted bug. It analyzed bug. And obviously, it looked at each of the elements in bug. Can you point to me any place in that Part B, where the court cites the bug standard, where the court again refers to the duty of fair representation? I cannot. I cannot, Your Honor. Then it's kind of difficult to say that that's actually applying the district court standard. Well, no. When I said that, Your Honor, the court then goes on to look. Right after it mentions the bug standard, it tries to find out whether or not the district court was correct in finding that there was a failure of the union to engage in fair representation. But I'm looking to see whether the court even makes reference to the terms fair representation anyplace else in the opinion. Okay. Well, directly below the discussion of bug, you see that they're asking or trying to find out, is it there? And they find that no. In this case, the union, while it represented males vigorously, it did not represent females. So that was the analysis of the justices. Which also sounds like just a straightforward Title VII application, doesn't it? It sounds like it, Judge. But, look, when you look at this. And it's clear that you could violate a duty of fair representation without violating Title VII. I agree. I agree. And I guess my further question is, if I jump with you to B and suggest that this is all about B, what do I do with A? Well, I think you could harmonize A. Because I don't see that A can be harmonized with B. A doesn't look anywhere near to this, if you will, duty of fair representation. A goes through a totally different analysis. Talking about Donald Douglas, goes through exactly the burden shifting that I suggest is normal in most of our Title VII cases. And I guess I'm trying to figure out how you get rid of A with your argument. Right. I don't say get rid of A. I think the court found in this case, in portion B, I think what the court was saying is that you can harmonize Title VII and the bug standard. And it's a good practical way to do it. And that's why they comment, specifically comment in portion B. Well, I didn't see anything in B where it was trying to harmonize anything. Well, I think all your questions. I looked through A, and I looked through the application, if you will, of the McDonnell-Douglas test and how I would do it. And it's the normal Title VII analysis that I give. And, frankly, I'm having a tough time seeing how B is the big change that I'm now supposed to weed. Because, again, as my good colleague has suggested, it seems to me they're looking at what the district court did, not what we do here. Well, all I can say, Your Honors, is that what the court said in this opinion, in portion B, was that the bug standard made sense and was a logical way to apply the McDonnell-Douglas standard as applied to cases like this one. Let's suppose for the moment that the panel is not bound by anything that we said in Beck with respect to a Title VII claim against a union. So, as between bug and green, tell me why bug is correct. Tell me why the Seventh Circuit's reconsideration in green is wrong. Well, Judge, I think when you look at the policies underlying direct claims against the union, really what goes to the heart of all those claims is the duty of the union to represent employees. And without a duty to represent employees, a fair duty of representation, there really should not be a valid claim against the union. Otherwise, you wouldn't have to sue the employer. You'd go directly to the union, and they'd become the guarantor. Right, but this is for the union's own discrimination, not for something that presumably the employer has done. Well, again, the whole duty, the whole point of the union... Ms. Garrity's claim here doesn't have anything to do with the post office. That's true. This is all about the union. So this is an independent cause of action. Congress created an independent cause of action in Title VII, specifically incorporates unions as its own section. It's different from other employers. And why isn't Judge Easterbrook correct that if the Title VII claim includes a DFR element, that it's rendered irrelevant? Okay, well, at bottom, again, Your Honor, the best answer I have for you is that without a breach of the duty of fair representation, there isn't a valid claim against the union. Is there any other opinion out there that gives a considered treatment of this question? I know that we have unpublished opinions from the Fifth and Sixth Circuits, but it looks like everybody just followed Bug. Your Honor, I did extensive research on this, and I could not find another considered opinion on this issue. Is there anything in our court post Beck that suggests that reaffirms Beck or that offers any other analysis? I didn't find any, Your Honor, and we looked. What did you look? What did you do with Golden v. Local 55? Your Honor, I. That's a 1980 case that analyzes both causes of action. Your Honor, I'm not familiar with that case. All right. Your Honor, with the last two minutes, I'd like to address the claim preclusion issue. I guess my further question and the thing that most worried to me, it seems to me that an ADA claim can arise even before a contract. Well. And that the ADA claims even against the union can arise before the contract. And so, therefore, I'm still having a tough time understanding why the duty of fair representation should be included in the ADA claim. Well, Your Honor, again, the duties of the union in this case, the heart of the duties of the union, the duty of the union is to represent the employee. Well, I understand, but they can have a claim. They can have a claim even before they have a situation, can't they? Even before they have a contract. They can, Your Honor. So if they can and it's under ADA, then why is the duty of fair representation a part of the claim? Well, I think that what the court recognized in Bug and what this court recognized in Beck is that in this sort of a claim where you have a, where the heart of the claim is that the union did not vigorously represent someone like Ms. Garrity, that an element of that claim ought to be the duty of fair representation. All right. I'm sorry to interrupt you, but that was some worry to me. It seems to me that claims arise even before a contract happens. I understand, Your Honor. Okay. Look, I only have a minute left to address claim precluders. Your Honor, this case is identical to the case that was dismissed by Judge Dawson. I think both judges. Then why did we have two district judges that were asked to consolidate the question and both of them turned it down saying it wasn't identical? You know what, Judge? They had a totally different record when the motions to consolidate were heard and decided. Those motions were heard based upon the initial complaints. Ms. Garrity was then asked to amend both complaints. Both judges asked her to amend those. And through those amendments, both of those complaints morphed into each other. Ms. Garrity literally cut and pasted from each complaint and merged the two. But they're actually based on very different statutes. I mean, one had state law claims and it had the 1985 conspiracy claims and it had ADA and Title VII claims. The other one was based on the labor laws. Those aren't the same causes of action. Judge, in this case, they are barred. They're barred because they're based on the same operative facts. Both judges eventually figured that out. Judge Dawson eventually, in his order of dismissal, said, look, all of your claims, all of them are based on the handling of a single EEOC claim. And, of course, Judge Pearl realized the same thing when he dismissed the entire complaint based upon claim preclusion, issue preclusion. My time has passed. Thank you, Mr. Hall. I'll allow you the full minute for rebuttal. To begin, for the reasons stated, Beck didn't decide the question. But if this court thinks Beck did decide the issue, we would urge this court to send the case on bonk to avoid a circuit split and decide the question there. Secondly, the text of the ADA and Title VII is clear that Congress intended for these statutes to apply to labor organizations. It specifically included labor organizations among the entities covered by the statute. And in the case of the ADA, it simply defines covered entities to include labor organizations, employers, among other entities. And then it goes on to describe the kinds of discrimination that is barred by the statute, making no mention of different standards to apply for different entities, and making no distinction as to what entities are being sued. This events as a congressional intent for it to apply in full force to each of the covered entities named. Also, to speak just for one moment about the duty of fair representation, it is deferential to unions and ordinary claims. But given Title VII in the ADA, Congress has created a special circumstance in which intentional discrimination on the basis of certain kinds of things is not afforded deference. Thank you, Your Honor. Mr. Beck, take a half second and tell me what you think this Court's bottom line should be on this opinion. Well, Your Honor, it should explain that the duty of fair representation is not a part of Title VII or the ADA for the reasons that we've explained. Thank you. Thank you, Your Honor. Thank you. We want to thank all counsel for the argument, which was helpful, and I especially want to acknowledge the contribution of the students from Pepperdine. Ms. Garrity was well represented in this case. Thank you very much.
judges: Farris, Bybee, N.R. Smith